IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JEFFREY HUNTER, | : | |
| Plaintiff, | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| CITY OF PHILADELPHIA | : | |
| et al., | : | |
| Defendants. | : | No. 15-2737 |

<u>MEMORANDUM</u>

PRATTER, J.                                                                                                    NOVEMBER 30, 2015

Jeffrey Hunter has filed suit against Philadelphia Police Officer Michael Long and the City of Philadelphia (the "City"), claiming a violation of his civil rights during his May 2013 arrest. Defendants move to dismiss Plaintiff's claim against the City, arguing that despite three attempts to sufficiently plead that a municipal policy or custom caused his injuries, Mr. Hunter has still failed to set forth a viable *Monell* claim. The motion is granted for the reasons explained below.

**BACKGROUND**

According to his Second Amended Complaint, on or about May 22, 2013, Mr. Hunter was in need of immediate medical attention. Because he was physically ill, he laid down on the ground outside Mercy Hospital in Philadelphia. Police Officer Michael Long[1] approached Mr. Hunter and told him that he was not permitted to lie on the ground. Mr. Hunter avers that he informed Officer Long that he was sick and in need of medical attention. Despite Mr. Hunter's physically ill appearance and his pleas for help, Officer Long allegedly grabbed Mr. Hunter by the wrists, forcefully yanked his hands up behind his back, handcuffed him, and violently threw

---

[1] The Second Amended Complaint states allegations against Officer John Doe, but the parties have since stipulated that the officer who encountered Mr. Hunter was Officer Long.

1

him against the police car, fracturing his left fourth finger. While handcuffing Mr. Hunter, Officer Long also became verbally abusive toward him and ignored his pleas to loosen the handcuffs, which Mr. Hunter claims were applied too tightly. During this encounter, a nurse emerged from the hospital and informed Officer Long that Mr. Hunter was in need of medical attention. She offered to take Mr. Hunter into the hospital to receive care, but Officer Long replied that it was too late because Mr. Hunter was already under arrest. Officer Long then allegedly drove Mr. Hunter away from the hospital and released him on a street corner without explanation and without charging Mr. Hunter with any criminal offenses.

Mr. Hunter also alleges that Philadelphia police officers are daily confronted with people who are physically ill and in need of medical attention, and that the Philadelphia Police Department does not have any policies, directives, or training addressing a situation in which a police officer has to deal with a physically disabled or sick person. He further alleges that the City has adopted a policy or custom of performing unconstitutional seizures, both in general and specifically against physically ailing citizens seeking medical assistance.

The Second Amended Complaint contains two counts: a Fourth Amendment claim against Officer Long for unreasonable seizure, and a *Monell* claim against the City for adopting a policy, custom, or practice of unconstitutional seizures and for failing to train Philadelphia Police Officers in how to properly interact with physically ill citizens. Defendants move to dismiss the *Monell* claim against the City.

**LEGAL STANDARD**

A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) tests the sufficiency of a complaint. Federal Rule of Civil Procedure 8 requires only "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), in

order to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citations and internal quotation marks omitted) (alteration in original). However, the plaintiff must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* (citation omitted).

To survive a motion to dismiss, the plaintiff must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009). Specifically, "[f]actual allegations must be enough to raise a right to relief above the speculative level . . . ." *Twombly,* 550 U.S. at 555 (citations omitted). The question is not whether the claimant will ultimately prevail, but whether the complaint is "sufficient to cross the federal court's threshold." *Skinner v. Switzer,* 562 U.S. 521, 530 (2011). An assessment of the sufficiency of a complaint is thus "a context-dependent exercise" because "[s]ome claims require more factual explication than others to state a plausible claim for relief." *W. Penn Allegheny Health Sys., Inc. v. UPMC,* 617 F.3d 85, 98 (3d Cir. 2010) (citations omitted).

When deciding a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), the Court may look only to the facts alleged in the complaint and its attachments. *See Jordan v. Fox, Rothschild, O'Brien & Frankel,* 20 F.3d 1251, 1261 (3d Cir. 1994). The Court must accept as true all well-pleaded allegations in the complaint and view them in the light most favorable to the plaintiff. *Angelastro v. Prudential–Bache Sec., Inc.,* 764 F.2d 939, 944 (3d Cir. 1985). The Court must also accept as true all reasonable inferences that may be drawn from the allegations, and view those facts and inferences in the light most favorable to the non-moving party, here, Mr. Hunter. *See Rocks v. City of Phila.,* 868 F.2d 644, 645 (3d Cir. 1989). Nonetheless, the

Court need not accept as true "unsupported conclusions and unwarranted inferences," *Doug Grant, Inc. v. Greate Bay Casino Corp.,* 232 F.3d 173, 183–84 (3d Cir. 2000) (citations and internal quotation marks omitted), nor Mr. Hunter's "bald assertions" or "legal conclusions," *Morse v. Lower Merion Sch. Dist.,* 132 F.3d 902, 906 (3d Cir. 1997) (citations and internal quotation marks omitted). The Court must also disregard "naked assertions devoid of further factual enhancement" and "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Iqbal*, 556 U.S. at 678 (internal alterations omitted).

**DISCUSSION**

The Civil Rights Act that Mr. Hunter invokes creates a cause of action for persons who are deprived of their constitutional rights by any person acting under the color of state law or custom. 42 U.S.C. § 1983. In addition to creating a cause of action against the actor who caused the constitutional deprivation, § 1983 also permits an injured party to sue a municipality. *Monell v. Dep't of Soc. Servs.,* 436 U.S. 658, 690–91 (1978). However, a municipality will only be liable under § 1983 in limited circumstances. A municipality cannot be held liable for the unconstitutional acts of its employees on a theory of *respondeat superior*. *Id.* at 691. Instead, to state a claim against a municipality under § 1983, a plaintiff must allege that (1) the municipality had a policy or custom that deprived him of his constitutional rights; (2) the municipality acted deliberately and was the moving force behind the deprivation; and (3) his injury was caused by the identified policy or custom. *See Stewart v. Moll,* 717 F. Supp. 2d 454, 464–65 (E.D. Pa. 2010).

Defendants argue that Mr. Hunter's *Monell* claim fails because he provides only general, conclusory allegations regarding a municipal policy or custom, because he does not allege any facts as to the conduct of a policy maker, and because he has not alleged any other similar

conduct by officers that would give rise to a failure to train, supervise, or discipline claim against the City.

To be sure, it is clear that several of Mr. Hunter's allegations are mere restatements of the elements of a municipal liability claim, and thus, are "not entitled to the assumption of truth." *Santiago v. Warminster Twp.*, 629 F.3d 121, 132 (3d Cir. 2010). In particular, Mr. Hunter alleges, without supporting facts, that the City has for many years adopted a policy, custom, or practice of unconstitutional seizures against the general population and physically ailing citizens. However, aside from these conclusory statements, Mr. Hunter has alleged no *facts* to support this assertion. In other words, his Second Amended Complaint contains no factual allegations from which this Court could infer, without impermissible speculation, that such an official policy or custom of unconstitutional seizures exists.

In responding to the motion, Mr. Hunter does not contend that an existing policy or custom led to his mistreatment, or that a particular policymaker affirmatively acted to cause his injury. Rather, Mr. Hunter argues that he has sufficiently alleged that the City *lacks* a policy addressing situations in which Philadelphia police officers confront physically sick or injured people in need of immediate medical attention and that the City has failed to train its officers on how to handle situations involving sick or injured people in need of immediate medical attention. In essence, Mr. Hunter has to be arguing that having no policy is the same as having an actionable policy, *i.e.*, the City has a "policy of no policy." He claims that these *failures* directly resulted in his injury.

Aside from affirmative policies that are likely to result in constitutional violations and direct acts of policymakers that violate federal constitutional law, the Third Circuit Court of Appeals has held that a municipality also may be liable when a "policymaker has failed to act

affirmatively at all, [though] the need to take some action to control the agents of the government is so obvious, and the inadequacy of existing practice so likely to result in the violation of constitutional rights, that the policymaker can reasonably be said to have been deliberately indifferent to the need." *Natale v. Camden Cty. Corr. Facility*, 318 F.3d 575, 584 (3d Cir. 2003) (internal quotations omitted). A subset of this type of claim involves a failure to train employees under circumstances in which "(1) municipal policymakers know that employees will confront a particular situation; (2) the situation involves a difficult choice or a history of employees mishandling; and (3) the wrong choice by an employee will frequently cause deprivation of constitutional rights." *Wood v. Williams*, 568 F. App'x. 100, 105 (3d Cir. 2014) (citing *Carter v. City of Phila.*, 181 F.3d 339, 357 (3d Cir. 1999)). It is this type of *Monell* claim that Mr. Hunter argues he has alleged, both in terms of the absence of a policy addressing the handling of physically ill individuals and the failure to train police officers with respect to the same.

Ordinarily, in setting forth this type of claim, a plaintiff must show a pattern of similar constitutional violations to establish deliberate indifference on the part of the municipality. *Thomas v. Cumberland Cty.,* 749 F.3d 217, 223 (3d Cir. 2014) (citing *Connick v. Thompson*, 563 U.S. 51, 62 (2011)). "Without notice that a course of training is deficient in a particular respect, decisionmakers can hardly be said to have deliberately chosen a training program that will cause violations of constitutional rights." *Connick*, 563 U.S. at 62. Although Mr. Hunter alleges a pattern of violations similar to the one he suffered, he fails to allege *facts* to support this assertion. No specific instances of similar unconstitutional seizures appear in his Second Amended Complaint. Because Mr. Hunter's assertions of the existence of a pattern are not supported by factual allegations, the Court will disregard these "threadbare recitals of the elements of a cause of action." *Iqbal*, 556 U.S. at 678. Put simply, Mr. Hunter has failed to

allege facts sufficient "to raise a reasonable expectation that discovery will reveal evidence of the necessary element" of a pattern of similar violations. *Phillips v. Cty. of Allegheny*, 515 F.3d 224, 234 (3d Cir. 2008) (citations and internal quotation marks omitted). Without such a pattern of similar violations, municipal decisionmakers usually cannot be said to be on notice of a deficiency in their training regimen or official policies, and thus cannot be found to exhibit actionable deliberate indifference towards a plaintiff's constitutional rights. *Thomas,* 749 F.3d at 223.

Nevertheless, in some narrow circumstances, a "failure to train" or "lack of policy" claim may be established on the basis of a single constitutional violation. *See Connick*, 563 U.S. at 63-64. For instance, where a municipality places an officer in a situation such that the need for proper training or a governing policy is "so obvious" in light of the risk that constitutional violations will occur, the municipality may be liable for its failure to provide such training when a single violation occurs. *Thomas*, 749 F.3d at 223; *see City of Canton v. Harris*, 489 U.S. 378, 390 n. 10 (1989) (explaining that single-incident liability would apply, for instance, where a city knew with a "moral certainty" that its police officers would be required to apprehend fleeing felons and armed its officers with firearms without first training them on the constitutional limitations to the use of deadly force). In order for a single incident to give rise to a § 1983 cause of action against a municipality, the constitutional injury at issue must be a "highly predictable consequence" of the municipality's lack of established policy or failure to train its officers to avoid such injurious conduct. *Thomas*, 749 F.3d at 225 (quoting *Connick*, 563 U.S. at 63-64). In the absence of a history of employee misconduct, the situation alleged must present a "difficult choice" to the government employee who violated the plaintiff's constitutional right. *Carter*, 181 F.3d at 357. Thus, when a government employee's actions are patently

inappropriate such that the proper course of action was apparent without training, policymakers cannot be found to be deliberately indifferent because the need for training was not obvious in light of the risk that untrained officers would violate constitutional rights. *See Flores v. County of Los Angeles*, 758 F.3d 1154, 1159–60 (9th Cir. 2014) ("There is no basis from which to conclude that the unconstitutional consequences of failing to train police officers not to commit sexual assault are so patently obvious that the County . . . [was] deliberately indifferent."); *Schneider v. City of Grand Junction Police Dept.*, 717 F.3d 760, 773–74 (10th Cir. 2013) (finding that because specific training was not necessary for police officers to know that sexual assault is inappropriate behavior, policymakers could not be found to be deliberately indifferent); *Walker v. City of New York*, 974 F.2d 293, 300 (2d Cir. 1992) ("Where the proper response . . . is obvious to all without training . . . then the failure to train . . . [will] generally not . . . support an inference of deliberate indifference by city policymakers . . . .").

Here, if Mr. Hunter's allegations are true, as the Court must assume at this stage, Officer Long did not face a "difficult choice." Rather, if he acted as Mr. Hunter alleges, his conduct constitutes a clear violation of Mr. Hunter's Fourth Amendment rights. The only "choice" that Officer Long allegedly faced, according to the scenario alleged by Mr. Hunter, was whether or not he should refrain from illegally seizing a citizen in physical distress, and, without cause, employing excessive force, and removing him from, or intentionally denying the needy citizen, a source of aid. As other courts have found, where a police officer acts in a patently inappropriate manner such that "the proper response . . . is obvious to all without training," an inference of deliberate indifference is not supported. *Walker*, 974 F.2d at 300; *Simonds v. Delaware Cty.*, Civil Action No. 13-7565, 2015 WL 1954364, at *6 (E.D. Pa. Apr. 30, 2015) (dismissing a *Monell* claim where the plaintiff could not identify an obvious flaw in existing procedures that

caused plaintiff's damages, thus precluding a finding of deliberate indifference). Mr. Hunter may be puzzled by the conclusion that the more obvious or egregious the officer's conduct, the less likely it is that a viable *Monell* claim can be sustained against the officer's municipal employer. Nonetheless, upon reflection, this is a sensible construct of established legal principles. Accordingly, Mr. Hunter has not alleged facts demonstrating deliberate indifference on the part of the City's decisionmakers.

In a similar vein, the City's alleged failure to train its police officers to refrain from unconstitutionally seizing physically sick individuals could not have been the proximate cause of Mr. Hunter's injury. A plaintiff must allege facts demonstrating that the municipality's practice proximately caused the injuries he suffered. *See Losch v. Borough of Parkesburg,* 736 F.2d 903, 910 (3d Cir. 1984). Proof of proximate causation requires that there be "an affirmative link between the policy and the particular constitutional violation alleged." *City of Okla. City v. Tuttle,* 471 U.S. 808, 823 (1985). In circumstances involving obvious misbehavior by a state employee, the causal connection between a failure to train or lack of policy and a subsequent violation of a constitutional right is likely too attenuated to result in municipal liability. *See Parrish v. Ball*, 594 F.3d 993, 1000 (8th Cir. 2010) (holding that the causal connection between a police department's failure to train its officers not to sexually assault women and a subsequent rape by an officer was "too remote as a matter of law" to meet the high causal standard of municipal liability because "there is no obvious need to train officers not to sexually assault women").

Here, the causal connection between the alleged lack of training and the subsequent violation is simply "too remote as a matter of law" to support a finding of municipal liability because the conduct alleged, if it occurred, was patently unlawful apart from the specialized

9

training Mr. Hunter alleges the City should have provided. *Parrish*, 594 F.3d at 1000. Assuming that general training on the constitutional bounds of reasonable seizures is provided by the City (and Mr. Hunter has not alleged any facts to the contrary), Officer Long would have been sufficiently aware that a seizure of Mr. Hunter under the alleged circumstances was unconstitutional. It follows that the City's failure to provide additional training—regarding constitutional restraints on the use of force against sick and distressed citizens seeking medical treatment—could not have been the cause of Mr. Hunter's injury because such training would not have altered Officer Long's patently wrongful conduct as alleged. *See Simonds*, 2015 WL 1954364, at *6 (holding that plaintiff did not adequately plead causation where a prison physician deliberately ignored an inmate's outside doctor's treatment order, even though the prison did not have a specific policy requiring prison physicians to follow up on such orders, as the doctor's conduct was already proscribed by law); *Mohammed v. John Doe Pa. State Police Supervisors,* Civil Action No. 11-5004, 2013 WL 5741788, at *10 (E.D. Pa. Oct. 23, 2013) ("Plaintiff fails to demonstrate any additional training that the officers should have received that would have caused the Troopers to act differently."). Thus, the causal connection between the alleged failure to train and the subsequent constitutional violation has not been plausibly established.

Mr. Hunter argues that similar single-incident claims were not dismissed in *Natale*, 318 F.3d 575, and *Reynolds v. Municipality of Norristown,* Civil Action No. 15-0016, 2015 WL 4450979 (E.D. Pa. July 17, 2015). However, both of those cases involve what the present case lacks: facts demonstrating deliberate indifference and causality. In *Natale*, a prison health service failed to establish policies ensuring that new inmates with serious medical conditions would receive their medication during the first seventy-two hours of incarceration. *Natale*, 318

10

F.3d at 585.  The court held that a reasonable jury could have concluded that the failure to establish such protective policies constituted deliberate indifference to the rights of inmates because of the known or obvious consequences of such a deficiency in medical processing.  *Id.*  Similarly, in *Reynolds*, the plaintiff identified a highly specific type of training that the municipality had failed to afford its officers; namely, that "officers are not trained to differentiate a head injury from drug or alcohol use in vehicle accident victims."  *Reynolds*, 2015 WL 4450979, at *11.  The plaintiff in *Reynolds* also alleged that police officers were given discretion to decide whether detainees suffered from life-threatening injuries and whether they needed immediate medical attention.  *Id.* at *12.  Because the municipality had placed its officers in a position which engendered a high likelihood that untrained officers would make the wrong choice and thereby cause a violation of the detainee's constitutional rights, the court concluded that the plaintiff had pled facts plausibly demonstrating deliberate indifference.  *Id.*

In contrast, Mr. Hunter has failed to allege facts to show either deliberate indifference or a causal connection between a failure to train under these circumstances and a deprivation of his constitutional rights.  To reiterate, for a need to be obvious to policymakers, the situation must present a difficult choice creating a risk of unconstitutional outcomes, such as was presented in *Natale* and *Reynolds*, but is not present here.  Mr. Hunter's case is more akin to cases that have refused to allow single-incident claims to proceed.  For instance, in *Simonds*, the plaintiff alleged that prison staff deliberately ignored a doctor's orders for follow-up care, and the court held that those allegations could support the claim of individual liability of the prison staff who ignored the orders, but did not reveal any sort of systemic deficiency.  *Simonds*, 2015 WL 1954364, at *11.  The *Simonds* court also held that the plaintiff failed to show a causal link between the lack of a policy and the injury because the plaintiff alleged that the prison staff deliberately ignored

11

the doctor's orders and failed to provide medical treatment for a serious injury, suggesting that any policy governing the conduct would have similarly been ignored. *Id.* Likewise, here Mr. Hunter alleges that Officer Long saw that he was physically ill, was confronted by a medical professional who confirmed Mr. Hunter's needs, and still Officer Long acted in a patently unreasonable manner towards Mr. Hunter.

**CONCLUSION**

For the foregoing reasons, the Court will grant the Defendants' Motion to Dismiss Hunter's *Monell* claim against the City. An appropriate order follows.

BY THE COURT:

S/Gene E.K. Pratter
GENE E.K. PRATTER
UNITED STATES DISTRICT JUDGE